UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| KATHY LYNN GRALIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:2:23-cv-279 |
| | ) | |
| CITY OF VALPARAISO, MAYOR MATT | ) | |
| MURPHY (in his individual capacity), and | ) | |
| MIKE JESSEN (in his individual capacity), | ) | |
| ORGANIZATIONAL DEVELOPMENT | ) | |
| SOLUTIONS, INC., and DESILA ROSETTI, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kathy Lynn Gralik, ("Gralik"), by counsel, files this Complaint and Demand for Jury Trial against Defendants City of Valparaiso ("City of Valpo"), Matt Murphy, Mike Jessen, Organizational Development Solutions, Inc., and Desila Rosetti, pursuant to the Equal Pay Act of 1963 ("Equal Pay Act"), 29 U.S.C. § 206 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.,*[1] the First Amendment, the Fourteenth Amendment Equal Protection Clause, 42 U.S.C. §§1983 and 1988, and Indiana common law.

## I.        PARTIES, VENUE, AND JURISDICTION

1.        Gralik is a citizen of Indiana who resides in Valparaiso, Indiana.

2.        The City of Valparaiso ("City of Valpo" or "City") is the governing body for the City of Valparaiso and is a political subdivision of the State of Indiana, with its principal place of business in Valparaiso, Indiana.

---

[1] Gralik filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 26, 2023, alleging violations of Title VII of the Civil Rights Act, including gender discrimination, hostile work environment based on gender, and retaliation. Gralik intends to amend this Complaint to add Title VII claims after she receives a notice of right to sue from the EEOC, as well as add additional potential claims.

3.      Individual Defendant Matt Murphy ("Murphy") is the Mayor of the City of Valpo.

4.      Individual Defendant Mike Jessen ("Jessen") was the City of Valpo Administrator and Gralik's supervisor from January 1, 2020 until May 1, 2023.

5.      Organizational Development Solutions, Inc. ("ODS") is an Indiana corporation with its principal office address in Westville, Indiana.

6.      Desila Rosetti ("Rosetti") is an employee and/or agent of ODS and its incorporator. On information and belief, Rosetti resides in Westville, Indiana.

7.      Gralik, a female, is an employee of the City of Valpo as defined in 29 U.S.C. §203(e). She has worked for the City of Valpo since September 2000.

8.      On or about March 3, 2022, Gralik served the City of Valpo and Murphy with a Notice of Tort Claim in compliance with the Indiana Tort Claims Act, Ind. Code § 34-13-3-1 *et seq*. A copy of the Notice of Tort Claim is attached to this Complaint as Exhibit 1.

9.      This Court has personal jurisdiction over Plaintiff and Defendants and venue is proper in this Court.

10.      This Court has original subject matter jurisdiction over Gralik's claims arising under federal law pursuant to 28 U.S.C. § 1331, in that the claims arise under the laws of the United States, and particularly the Equal Pay Act of 1963 §206 *et seq.,* the FMLA, 29 U.S.C. § 2601 *et seq.*, the First Amendment, the Fourteenth Amendment, 42 U.S.C. § 1983, and 42 U.S.C. § 1988. This Court has supplemental jurisdiction over Gralik's state law claims pursuant to 28 U.S.C. § 1367.

11.      Venue is proper pursuant to 28 U.S.C. § 1391, in that Defendants are subject to personal jurisdiction in the Northern District of Indiana, Defendants regularly conduct business

activities within the Northern District of Indiana, and the events giving rise to the claims occurred in the Northern District of Indiana.

## II.     FACTUAL ALLEGATIONS

12.     Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

### **Gralik's Pay Disparity**

13.     Gralik is the Human Resources Director for the City of Valpo and has served in that position since 2016.

14.     Before June 16, 2023, Gralik was one of four female department heads employed by the City of Valpo. By contrast, the City of Valpo has ten male department heads.

15.     Murphy and the City of Valpo hired Jessen to serve as the City Administrator in 2020.

16.     In 2022, the City of Valpo conducted a Wage Study. The Wage Study revealed that on average, female Department Heads were paid 31% less than their male counterparts.

17.     Gralik's 2022 annual salary was $73,895.00.

18.     Gralik's HR Director position was classified as an "Executive B" position.

19.     According to the 2022 Wage Study and a spreadsheet created by the City of Valpo's Clerk-Treasurer, Gralik had the lowest annual salary among all "Executive B" positions in the City of Valpo.

20.     The City of Valpo paid Gralik less than her similarly situated male counterparts. For example, the City of Valpo's IT Director, also classified as "Executive B," had an annual salary in 2022 of $88,198.00.

21.     The IT Director of the City of Valpo is male.

22.    After the Wage Study was completed, the City of Valpo gave pay raises across the board, capped at 4%, or halfway to the midpoint in the Study, whichever was less ("the 4% cap").

23.    The City Council sets the pay range for City of Valpo employees.

24.    The Mayor and City Administrator then choose what Department Heads would be paid, which was supposed to fall within the pay range set by the City Council and the Wage Study recommendations.

25.    Murphy and Jessen insisted on setting salaries contrary to the Wage Study and Ordinance #10, 2023 as passed by the City Council.

26.    On or about October 3, 2022, Gralik informed Jessen of the need to apply the Wage Study findings to eliminate gender-based pay disparities among City of Valpo employees. After repeated requests and attempts, Gralik met with Jessen in his office and expressed her concerns that the change to the pay raise policy would widen the pay disparity across the City of Valpo.

27.    Jessen never looked away from his computer screen throughout the entire conversation and dismissed Gralik's concerns out of hand. In fact, within two weeks of voicing her concerns, Gralik learned that the plan to pay men over the midpoint a $500 pay raise was increased to a $1,000 pay raise.

28.    By objecting to the gender pay disparities, Gralik engaged in protected activity both as the Director of Human Resources and as a private citizen.

29.    Gralik also objected to the gender pay disparities to Clerk-Treasurer Holly Taylor on or about October 3, 2022, and told her the pay raise policy would only widen the pay gap disparity in the City, to which Taylor replied, "those guys never listen to me."

30.    Murphy and Jessen both ignored Gralik's objections and advice concerning wage equity.

4

31.    With the 4% cap, female department heads remained $8,335.50 below the midpoint of the salary range on average, while male department heads moved to $1,529.50 above the midpoint on average. The pay raises did not rectify the pay discrepancy between male department heads and female department heads.

32.    With the pay raise, Gralik's 2023 salary increased to $76,851.00, but it remained below the minimum pay rate for the Executive B employee classification (and the lowest of all Executive B employees) and was below the minimum required by the City's Ordinance #10, 2023.

33.    In approximately April 2023, the City of Valpo increased Gralik's annual salary to $79,764.00 (the minimum pay required by Ordinance #10, 2023 and the minimum pay rate for the Executive B employee classification), retroactive to January 1, 2023.

34.    The April 2023 pay increase did not remedy the past pay disparity nor the gender differences in pay.

35.    Despite the recent pay raises, Gralik remains the lowest paid Executive B employee for the City of Valpo.

## Gralik's FMLA Leave

36.    On or about March 29, 2022, Gralik informed Jessen that she needed hip replacement surgery due to a genetic condition affecting her hips. Gralik's surgery was scheduled for April 29, 2022.

37.    Gralik informed Jessen of the anticipated timing and duration of her medical leave.

38.    Gralik provided Jessen with notice sufficient to make Jessen reasonably aware of Gralik's need for FMLA qualifying leave.

39.     Upon receiving notice from Gralik of a potential FMLA-qualifying event, the City of Valpo failed to provide Gralik with notice of her eligibility (or potential eligibility) to take FMLA leave, and instead let Gralik, as Head of HR, provide that notice to herself.

40.     Upon receiving notice from Gralik of a potential FMLA-qualifying event, the City of Valpo did not provide Gralik with an FMLA request form, or otherwise advise her that she needed to take any further steps for approval of medical leave.

41.     Gralik underwent hip replacement surgery on April 29, 2022.

42.     Gralik resumed working one week later, working part time from home initially and then later returning to her office because the City failed to provide anyone to cover Gralik's duties.

**The False ODS Audit of Gralik's HR Department**

43.     On repeated occasions while HR Department Head, Gralik informed the City of Valpo administration of the need for the HR Department to be centralized and have additional staff.

44.     Murphy, Jessen, and the City of Valpo disregarded Gralik's advice.

45.     Two months after Gralik's surgery, the City of Valpo hired a contractor, Organizational Development Solutions, Inc. ("ODS"), to conduct an audit of the HR department.

46.     The audit was initially suggested by Steve Poulos, a fellow male department head with no direct supervisory authority over Gralik.

47.     Gralik satisfied HR Director job expectations and was described by Mayor Murphy's transition team as a "rock star," according to one City of Valpo administrator on that team.

48.     Desila Rosetti is the President and Founder of ODS. Rosetti represented to multiple people within the City of Valpo that she is related to the Mayor. On information and belief, Rosetti is the cousin of City of Valpo Mayor Matt Murphy.

49.    Gralik was not informed in advance of the ODS audit of her department. The City of Valpo solicited the ODS contract without her knowledge or input into the scope of the audit or its goals.

50.    No male City of Valpo department head has had his department audited while being excluded from the decision whether to conduct an audit.

51.    On information and belief, the audit was undertaken to harm Gralik's reputation and was pretextual, not undertaken for any legitimate purpose, but in retaliation for Gralik taking FMLA leave, because of her gender and opposition to the City's discriminatory policies, and/or because Gralik helped other City employees by handling their gender-related complaints.

52.    ODS and Rosetti held the kick-off meeting for its HR Audit on July 11, 2022, while Gralik was on vacation.

53.    ODS and Rosetti issued an Executive Summary of its HR Audit in October 2022, and an attendant Audit Report.

54.    After multiple requests from Gralik, Jessen ultimately provided Gralik with the Executive Summary on January 9, 2023.

55.    Gralik was not provided the Audit Report, purportedly completed in October 2022, until after she hired legal representation, who requested it from City of Valpo counsel.

56.    The City of Valpo began to formally discuss restructuring of the HR Department after Gralik asserted FMLA claims and opposed gender-based discrimination.

57.    The City now claims that based on the Audit and Executive Summary, it must enact the same recommendations Gralik made repeatedly over the years which were ignored, including the need for the HR Department to be centralized and have additional staff.

58.     In addition, the ODS Executive Summary and Audit Report prepared by Rosetti contained false statements ("the falsehoods"), some of which read as follows:

      a.   "There is no training being provided to department staff who are performing HR functions on behalf of the employees."

      b.   "[A]ll files reviewed are incomplete."

      c.   "[W]e have not found one HR process that is being done consistently."

      d.   "There are currently no HR policies and procedures."

      e.   "The HR Director is not aware of any strategic HR plans in place for the HR Department of the City in general."

      f.   "There are no metrics currently being measured."

59.     Gralik informed the City of Valpo of these and other falsehoods, but the City refused to ask ODS and Rosetti to correct them, or to otherwise fix, remove, or remedy these falsehoods.

60.     An employee in the City of Valpo fire department informed Gralik that ODS and Rosetti directed her to destroy certain city files during the audit process.

61.     After the Executive Summary, Jessen informed Gralik "we are planning to hire a Chief Human Resources Officer (CHRO) and you are welcome to apply. You're solid and your position with the city is secure. Your salary is secure."

**Gralik's Demotion and the Creation of the CHRO Position**

62.     The City of Valpo Board of Works conducted a meeting on February 24, 2023. During that meeting, Jessen proposed a contract with ODS to hire a CHRO.  The Board approved the contract.

63.     The City of Valpo and Murphy hired a new person in the position of CHRO on or about June 16, 2023.

64.     The City of Valpo and Murphy refused to hire Gralik for the position of CHRO.

65.     In June of 2023, the City of Valpo and Murphy demoted Gralik from her department head position and removed her from the city's leadership team.

66.     The City of Valpo told Gralik she is welcome to apply for a yet-to-be-created CHRO Deputy position, but has also advised that her current position is being eliminated no later than December 31, 2023.

67.     The City of Valpo told Gralik the selection and pay of the Deputy CHRO will be at the CHRO's discretion.

68.     The City of Valpo and Murphy have yet to inform Gralik how she may apply for the demoted position of Deputy CHRO, despite her having repeatedly inquired about her future employment with the city.

69.     Upon information and belief, once the City of Valpo hires a Deputy CHRO, the City of Valpo will eliminate Gralik's current position as HR Director.

**Facts Concerning Gender-Based Pay Disparities for City of Valpo Employees**

70.     In 2022 and 2023, the following City of Valpo departments had male department heads: City Administrator; City Services; Engineering; Legal; Development; Information Technology; Project Management; Police; Fire; and Parks.

71.     In 2022 and 2023, the following City of Valpo departments had female department heads: Planning/Transit; Building & CE; Human Resources; and Community Engagement.

72.     In 2022, male department heads at the City of Valpo were paid an average of 40.78% above the low point of their "salary range."

9

73.     In 2022, female department heads at the City of Valpo were paid an average of 11.85% above the low point of their "salary range."

74.     In 2022, male department heads at the City of Valpo were paid an average 28.93% higher above the low point of the "salary range" than female department heads.  This salary differential worsened the following year by 4.2%.

75.     In 2023, male department heads at the City of Valpo were paid an average of 49.23% above the low point of their "salary range."

76.     In 2023, female department heads at the City of Valpo were paid an average of 16.10% above the low point of their "salary range."

77.     In 2023, male department heads at the City of Valpo were paid an average 33.13% higher amount of the "salary range" than female department heads.

78.     Murphy and Jessen ordered the 2022 and 2023 pay scales to be implemented based upon gender, implemented that policy, and/or failed to stop it, despite having had the gender pay disparity pointed out to them.

79.     In addition to the informal City of Valpo practices and customs pleaded herein, it has an official policy capping employee yearly pay increases at 4% or halfway to the salary range midpoint, whichever is less.  The application of this policy expands gender pay disparities over time.

80.     The ODS Audit acknowledges the City of Valpo's gender-based pay disparities.

81.     The City of Valpo Murphy Administration hired a total of eleven male and two female department heads (including the CHRO), and one male department heads is selected to replace a department head this year. Only the male Department Heads were "front-loaded" Paid Time Off ("PTO") or given a higher accrual rate for PTO.

**Facts Concerning Gralik's (and other Women's) Discriminatory Treatment in Promotion**

82.    On information and belief, the audit was performed, directly or indirectly, at Murphy's, Jessen's and/or Poulos' request, to intentionally discriminate against Gralik and to demote her based upon her gender, her objections to the City's discriminatory pay and employment practices, her FMLA leave, and/or having shepherded other City employees through the gender discrimination complaint process.

83.    Gralik was demoted from her responsibilities in 2023 as a result of the false audit, despite being more qualified by experience in her twenty-three years working in City Human Resources and already heading the the City's HR Department for fifteen years, including eight as HR Director, a position the City has stated is equivalent to CHRO.

84.    Gralik also possesses numerous HR certifications, including SPHR and SHRM-CP certifications.

85.    On information and belief, the audit was undertaken and the CHRO position created by Murphy, Jessen, and the City as a pretext to discriminate and retaliate against Gralik due to her gender and protected activities.

86.    The City, through its agent, admitted that the CHRO position is essentially the HR Director job Gralik has successfully performed for years, with a different title.

87.    The interviewers for the CHRO position included Rosetti and ODS, the same company linked to Murphy that created the defamatory audit at the City's request.

88.    The City hired ODS to recruit the CHRO after Gralik objected to the falsehoods in ODS' Executive Summary.

89.    The City conducted the internal evaluation of Gralik's discrimination claims internally and intentionally, recklessly, and/ or misleadingly denied those claims as illegitimate.

90.     On information and belief, the City has likewise failed to promote other women to positions for which they were the most and/or equally qualified because of their gender and/or protected activities.

**Facts Concerning The City's Hostile Work Atmosphere Towards Women**

91.     During the Murphy administration, Gralik was intentionally and routinely excluded from City of Valpo meetings, run by men in the City administration who openly and repeatedly called themselves "the guys." This included meetings pertinent to her own HR Department, while male employees were not so excluded.

92.     During the Murphy administration, and before, female City of Valpo employees, including Gralik, were routinely subject to inappropriate and gendered remarks from male supervisors.  In Gralik's case, this includes, but is not limited to, Jessen asking Gralik if she felt she "was too mothering."

93.     Female City of Valpo employees, and those affiliated with the City by virtue of funding, who objected to gender discrimination and/or used FMLA leave were "forced out," as Defendants have done and are attempting to do with Gralik, by deliberately creating intolerable working conditions with the intention of forcing them to quit, or setting a future date where their employment would be terminated once specific tasks were accomplished.

94.     On information and belief, male department head Steve Poulos, who is not in Gralik's chain of command, suggested the HR audit at Jessen's and Murphy's request, to discriminate against Gralik due to her gender, protected activities, and having shepherded other City employees through the discrimination complaint process.

12

95.    Steve Poulos also conducted the internal investigation of Gralik's discrimination claims and intentionally, recklessly and misleadingly denied those claims as not legitimate, and all other Defendants encouraged him to do so and/or failed to stop him from doing so.

96.    Less staff support and office space are given to female department heads than male department heads, including Gralik.

97.    Jessen and Murphy forced Gralik's HR Department to keep some confidential HR employee files in a bathroom closet in the basement of City Hall, easily accessible to anyone with a master key, despite Gralik having objected and requested proper confidential file storage space. The door has been found unlocked by Gralik on multiple occasions.

98.    Under a previous administration, the City undertook a renovation costing more than $4 million, devoting extensive space for the HR Department, but instead, the Murphy administration allotted that space to male department heads.

99.    Only male department heads were given executive assistants, while female department heads had administrative assistants (who receive lower pay and are "ranked" under executive assistants), at all pertinent times, until Gralik complained of discrimination.

100.    Upon Gralik's complaint, male department heads' executive assistants were demoted to administrative assistants, so they would hold the same title as the supporting staff for female department heads. The "former" executive assistants to male department heads continue to be paid more than the assistants to female department heads.

101.    Female department heads, including Gralik, were subject to worse conditions of employment than male department heads in a manner that hindered the functioning of departments headed by females.

**Facts Concerning the Capacities of the City Defendant Actors**

102.    Each Individual Defendant (i.e., Murphy and Jessen) is sued in their 42 U.S.C. §1983 individual capacity.

103.    For all facts pleaded herein, each City Defendant's (i.e., the City of Valpo, Murphy, and Jessen) acts and omissions were undertaken under color of law, with intent, and, for the Individual Defendants, within the scope of their employment with the City.

104.    Alternatively, each City Defendant's acts and omissions were undertaken under color of law and, for the Individual Defendants, outside the scope of their employment with the City.

105.    In setting pay for department heads and controlling the employment practices in the City of Valpo, Murphy and Jessen acted under color of law.

**Facts Concerning City Policies, Customs, and Practices**

106.    The City has a policy, practice and custom of authorizing, approving, and/or turning a blind eye to, and knowingly failed to instruct, train, supervise, and discipline about their agents', employees', and/or officials' discriminatory policies in pay and employment.

107.    The City Defendants continue to apply discriminatory pay and employment policies to female Valparaiso employees and those doing work with the City.

108.    On information and belief, the City Defendants' discriminatory policies as pleaded herein were and are undertaken on account of gender and protected activities.

**Facts Demonstrating Individual Liability**

109.    The City of Valpo and Individual Defendants crafted, voted to approve, implemented, and/or failed to intervene to stop discriminatory pay scales in 2022 and 2023.

110.    The City of Valpo and Individual Defendants crafted, voted for, allowed, and/or failed to intervene to stop the City of Valpo's discriminatory treatment in their female employees' terms and conditions of employment as pleaded herein.

111.    At all relevant times herein, the City Defendants have and had a duty to ensure no gender discrimination occurs in the City of Valpo's compensation, promotion, and employment policies.

112.    Each City Defendant failed to satisfy this duty.

113.    All of the City Defendants failed to conduct the proper inquiries or due diligence to ensure the City did not discriminate on the basis of gender in its employment and pay.

114.    All of the City Defendants ignored Gralik and others when advised against such discrimination, and instead, chose to retaliate against them.

115.    Each City Defendant crafted, implemented, and/or failed to intervene to stop the City's discriminatory treatment in treating female employees with hostility, subjecting them to gendered remarks, and/or excluding them from employment opportunities that were extended to men.

116.    All of the City Defendants caused the City's discriminatory employment and pay policies, practices, and customs as pleaded herein, and failed to intervene to stop them, although they could have done so.

117.    All of the City Defendants failed to ensure that they and other City of Valpo employees received proper training on lawful employment practices.

118.    The Individual Defendants knew that the City was discriminating based on gender, but allowed it to continue. Such discrimination is part of the City's policies, customs, and practices.

**Allegations Applicable to 42 U.S.C. § 1983 Claims**

119.    Until he departed his City employment on May 1, 2023 (after Gralik and others complained about the City's discriminatory practices), Jessen was Gralik's supervisor and in that time, controlled the terms and conditions of her employment, along with Murphy.

120.    Jessen and Murphy exercised *de facto* supervisory authority over Gralik's and others' employment and controlled its terms and conditions.

121.    On information and belief, Murphy and Jessen directed subordinates to implement the discriminatory 2022 and 2023 pay scales and encouraged or directed subordinates to engage in discriminatory promotion and employment policies based on gender.

122.    Murphy as Mayor and Jessen as (former) City administrator are liable for the acts and omissions of the City of Valpo and its employees and agents. The acts and omissions pleaded were the direct result of policies and/or customs adopted, devised, and/or authorized by them.

123.    At all relevant times, the City of Valpo, Jessen, and Murphy had a realistic opportunity to prevent harm to Gralik.

124.    At all relevant times, the City of Valpo, Jessen, and Murphy had a continual duty to instruct, supervise, control, and discipline the City's application of employment policies.

125.    The City Defendants failed to satisfy these duties.

126.    Murphy and Jessen are additionally liable under the doctrine of supervisory liability by intentionally causing, implementing, and refusing to prevent such deprivations of Gralik's Constitutional rights as described herein.

127.    Murphy and Jessen are liable for the acts and omissions of the City of Valpo and its employees, officials, and agents, under the doctrine of *respondeat superior*, because on information and belief, they directed, encouraged, and/or failed to stop those actions.

16

### III.    LEGAL ALLEGATIONS

### Count I: Violation of the Equal Pay Act – 29 U.S.C. § 206(d)

### (Against the City of Valpo)

128.    Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

129.    The City of Valpo has paid, and continues to pay, Gralik less compensation (including wages, salary, and benefits) than that paid to similarly situated male employees performing equal work requiring similar skill, effort, and responsibilities performed under similar working conditions.

130.    At a minimum, the male department head for the Information Technology Department performed equal work requiring similar skill, effort, and responsibilities, performed under similar working conditions.

131.    In compensating Gralik for her work, the City of Valpo has violated, and continues to violate, the Equal Pay Act.

132.    The City of Valpo willfully violated the Equal Pay Act by persisting in discriminatory pay practices after recognizing the existence of the pay disparity adversely affecting Gralik.

133.    Gralik has suffered and continues to suffer damages in lost wages, compensation, and benefits as a result of the City of Valpo's violation of the Equal Pay Act.

## Count II: FMLA Interference/Retaliation - 29 U.S.C. § 2615

## (Against the City of Valpo)

_____

134.    Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth here.

135.    Gralik engaged in a protected activity by requesting and exercising medical leave for the purpose of seeking treatment for a serious health condition (hip replacement surgery).

136.    Alternatively, Gralik exercised protected activity by providing the City of Valpo with reasonable notice of her need for FMLA-qualifying leave, and the City of Valpo interfered with Gralik's exercise of her FMLA rights by failing to provide her with the information and documentation they now belatedly claim was necessary to exercise formal FMLA leave.

137.    Gralik suffered one or more adverse employment actions, impacting the terms and conditions of her employment, including but not limited to her demotion and material diminution of duties in her position as HR Director.

138.    But for Gralik's exercise of rights protected by the FMLA, the City of Valpo would not have taken adverse employment actions against her.

139.    Gralik has suffered damages as a result of the City of Valpo's FMLA violations, including but not limited to lost wages, compensation, and benefits.

**Count III: Equal Protection Claim Against All City Defendants - 42 U.S.C. §1983**

**(City of Valpo, Murphy, and Jessen)**

140.    Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth herein.

### A.    Failure to Train and Intervene Liability

141.    The misuse of municipal authority in City of Valpo employment policies as pleaded herein is due to the City Defendants' failure to train.

142.    As the HR Department Head, Gralik repeatedly requested the City Defendants implement needed and promised discrimination avoidance training, but the City purposefully and intentionally refused to do so.

143.    The City Defendants' intentional failure to train, malice, willful and wanton conduct, recklessness and/or gross negligence has resulted in official and *de facto* policies of gender discrimination, including but not limited to:

a.    the 4% cap which worsens gender pay inequities over time;

b.    disparate and less favorable pay for women as pleaded herein;

c.    the routine exclusion of women from employment opportunities, advancement, and meetings necessary for advancement;

d.    inappropriately hostile, gendered comments towards female employees;

e.    retaliation against those who oppose unlawful discrimination,

f.    less staff support and office space and facilities for female department heads; and

g.    only male department heads having "executive assistants" while female department heads had lesser paid, lesser ranking "administrative assistants."

19

144.    Each City Defendant was aware that gender discrimination was routine and widespread within the City of Valpo for years yet proceeded to implement it nonetheless and failed to train to prevent it.

145.    The City Defendants' *de facto* and official policies described herein are reckless and/or intentional, willful, and wanton.

146.    The City Defendants consciously chose, authorized, and had a knowing failure to train not to engage in employment practices violating the Constitution.

147.    On information and belief, no one has been reprimanded, replaced, or subject to retraining to address the failure to train pleaded herein, which harmed Gralik and other female employees in their pay and conditions of employment in at least 2022 and 2023.

148.    The City of Valpo and its senior policymakers, Murphy and Jessen, did not train, reprimand, or discipline anyone to avoid their agents' disregard of Constitutional limits on municipal employment.

149.    The City Defendants' training and customs are inadequate to handle the effectuation of City of Valpo employment policy within the bounds of the Constitution.

150.    The City's official and *de facto* employment policies rendered it highly predictable that Constitutional violation would occur absent better training and supervision.  The City Defendants knew or should have known that there was an obvious need for training to avert harm.

151.    Employment policies which discriminate by gender are unconstitutional, and as public servants, the City Defendants knew or should have known this.

152.    The City Defendants knew that the wrongs committed by their agents were being committed in a pattern, custom, and practice, including against Gralik.

153. By failing to administer proper disciplinary action for discriminatory treatment of female Valpo employees, the City Defendants each approved, encouraged, and tacitly promoted a continued pattern of such unlawfulness.

154. The City of Valpo's and Individual Defendants' acts and omissions against Gralik and others demonstrate that they acted in an intentional and deliberately indifferent manner.

155. The deliberately indifferent training and supervision provided by the City of Valpo, Murphy, and Jessen, despite Gralik having pushed for more such training, resulted from an intent to violate Gralik's Constitutional rights as well as a conscious or deliberate choice to follow a course of action from among various alternatives; and were the moving force behind the Constitutional violations pleaded herein.

156. The City Defendants' acts and omissions were objectively unreasonable and shocking to the conscience and done to Gralik because she is female and engaged in protected activity.

157. The City Defendants' failure to train directly and proximately caused the Constitutional violations pleaded herein.

158. As a direct and proximate cause of the City Defendants' failures to train and intervene, Gralik suffered the injuries pleaded herein, including emotional damages and humiliation, and has incurred attorneys' fees.

### B.  *Monell Liability*

159. At all relevant times, each of the City Defendants maintained and failed to intervene to stop their official and *de facto* policies of gender discrimination against female Valpo employees which provided them worse pay, working conditions, a hostile atmosphere, retaliation against those opposing discrimination, and fewer employment opportunities than are provided male employees.

160. At all relevant times, each of the City Defendants was aware of these discriminatory policies.

161. In denying Gralik and others equal conditions of employment, each of the City Defendants acted pursuant to these discriminatory policies.

162. The City Defendants' discriminatory policies are not sporadic but are consistently applied to female Valpo employees.

163. The City Defendants' 4% cap and *de facto* discriminatory policies are so pervasive that they carry the force of law, because they knew of these policies yet continued and encouraged them.

164. The City Defendants' discriminatory policies are the direct and proximate cause of the equal protection and First Amendment violations pleaded herein.

165. The City Defendants are liable for the acts and omissions pleaded herein because they were a direct result of the policies adopted, incorporated, and/or authorized by each of the City Defendants.

166. Any reasonable female person in the same position as Gralik would likewise have been detrimentally affected by Defendants' discriminatory policies.

167. As a proximate cause of the City Defendants' acts and omissions, Gralik suffered the injuries pleaded herein, humiliation, emotional distress, and has incurred attorneys' fees.

### C.    *Equal Protection Violation*

168. Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on gender is presumptively unconstitutional and subject to heightened scrutiny. The protections from gender discrimination encompass discrimination in employment.

169.    By paying and treating Gralik worse in her pay and conditions of employment than similarly situated male employees, each of the City Defendants, under color of law, has intentionally treated Gralik differently based on her gender and protected activities.

170.    Gralik was subjected to purposeful discrimination because of her sex.

171.    The City Defendants' acts and omissions were pursuant to their execution of an official City of Valpo policy custom, or practice which has caused and is causing constitutional violation.

172.    Gender discrimination is not substantially or rationally related to any legitimate government interest.

173.    Gralik's right to be free from gender discrimination in the terms and conditions of her employment was, at all material times, a clearly established right that a reasonably well-trained public servant would know.

174.    The City Defendants' discriminatory acts and omissions were done with the intent of depriving Gralik of her equal protection in violation of the Fourteenth Amendment.

175.    The City Defendants are liable for their violation of Gralik's Fourteenth Amendment rights under 42 U.S.C. § 1983.

176.    As a proximate cause of the City Defendants' acts and omissions, Gralik suffered the injuries pleaded herein, humiliation, emotional distress, and has incurred attorneys' fees.

## Count IV: First Amendment Claim Against All City Defendants - 42 U.S.C. §1983

## (City of Valpo, Murphy, and Jessen)

177.    Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth herein.

178.    By informing Murphy, Jessen, and the City of Valpo administration of the need to apply the Wage Study findings to eliminate gender-based pay disparities among Valpo employees, Gralik engaged in activity protected by the First Amendment ("protected activity").

179.    Gralik's right to object without attendant retaliation was, at all material times, a clearly established right that a reasonably well-trained public servant would know.

180.    In seeking the audit on the recommendation of a similarly situated male department head without Gralik's input, adopting its false findings, demoting Gralik, refusing to hire her for the CHRO position, and continuing to pay her less than similarly situated male colleagues, Defendants retaliated against Gralik for her protected activity.

181.    The City Defendants are liable for their violation of Gralik's First Amendment rights under 42 U.S.C. § 1983.

182.    As a proximate cause of the City Defendants' acts and omissions, Gralik suffered the injuries pleaded herein, humiliation, emotional distress, and has incurred attorneys' fees.

**Count V: Defamation Claim Against the City of Valparaiso, Matt Murphy, Mike Jessen, Organizational Development Solutions, Inc., and Desila Rosetti**

183.    Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth herein.

184.    The falsehoods set out above and made by Rosetti and ODS in the Executive Summary and Audit Report were untrue.  Rosetti and ODS knew the statements were false, made the statements with a reckless disregard for the truth, and she made the statements with malice.

185.    The falsehoods were intentionally made by Rosetti and ODS for the purpose of causing harm to Gralik's reputation and standing in the community.

186.    On information and belief, ODS and/or Rosetti, although knowing the Executive Summary and Audit contained numerous falsehoods, published or re-published the falsehoods to persons beyond those in the direct chain of command for Gralik's employment, outside of any common interest or public interest privilege, even after Gralik had informed the City of the falsehoods therein and requested they be corrected.

187.    On information and belief, Murphy, Jessen and/or the City, although knowing the Executive Summary and Audit contained numerous falsehoods, published or re-published the falsehoods to persons beyond those in the direct chain of command for Gralik's employment, outside of any common interest or public interest privilege, even after Gralik had informed the City of the falsehoods therein and requested they be corrected.

188.    On information and belief, the Defendants published or republished the falsehoods to Gralik's male contemporaries who had no role in decision-making for the H.R. Department and lacked any supervisory authority over Gralik.

189.    The City is responsible for the acts of its employees and agents in their publication and republication of the falsehoods, and is vicariously liable for those actions under the theories of *respondeat superior* and/or agency.

190.    ODS is responsible for the acts of its employees and agents in their publication and republication of the falsehoods and is vicariously liable for those actions under the theories of *respondeat superior* and/or agency.

191.    As a direct and proximate cause of the falsehoods, which are defamatory statements, Gralik suffered damage to her reputation and standing in the community, monetary damages, humiliation, emotional distress, and was demoted.

191.    The falsehoods in the ODS Audit and Executive Summary are libel *per se*, and damages are presumed.

## IV.    RELIEF REQUESTED

Gralik requests the following relief:

a.    All wages and other economic benefits lost as a result of Defendants' unlawful actions, including, but not limited to, back pay, front pay, and loss of future earning capacity;

b.    Compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial;

c.    Nominal damages against Defendants, jointly and severally, in an amount to be determined at trial;

d.    Liquidated damages, emotional distress damages, special damages, reputational damages (including presumed reputational damages), and/or punitive damages, in an amount to be determined at trial that will deter such conduct by Defendants in the future;

e.      All costs and reasonable attorney fees incurred in litigation of this action, pursuant to 42 U.S.C. §1988 for her 42 U.S.C. §1983 claims; 29 U.S.C. § 216(b); for her Equal Pay Act Claims; and 29 U.S.C. § 2617 for her FMLA claims;

f.      Pre-judgment and post-judgment interest;

g.      That the Court order the City of Valparaiso to appropriate funds for the payment of any judgment against it, if funds are available for that purpose, or to levy and collect a tax to pay the judgment, pursuant to Ind. Code §34-13-3-17; and

h.      Any and all other legal and/or equitable relief to which Gralik is entitled.

WHEREFORE, Plaintiff Kathy Lynn Gralik requests a judgment in her favor, the costs of this action, a trial by jury, and for all other just and proper relief.

Date:   August 15, 2023                    Respectfully submitted,

                                           /s/ Kathleen A. DeLaney
                                           Kathleen A. DeLaney (#18604-49)
                                           Christopher S. Stake (#27356-53)
                                           DELANEY & DELANEY LLC
                                           3646 N. Washington Blvd.
                                           Indianapolis, IN  46205
                                           Tel. 317.920.0400
                                           Fax  317.920.0404
                                           Kathleen@delaneylaw.net
                                           cstake@delaneylaw.net

                                           Paul B. Poracky (#10899-45)
                                           Karol A. Schwartz (#24679-45)
                                           Koransky, Bouwer & Poracky, P.C.
                                           425 Joliet Street, Suite 425
                                           Dyer, IN 46311
                                           Tel. 219.865.6700
                                           Fax 219.865.5840
                                           pporacky@kblegal.net
                                           kschwartz@kblegal.net

                                           *Attorneys for Plaintiff Kathy Lynn Gralik*

## JURY DEMAND

Plaintiff, Kathy Lynn Gralik, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Christopher S. Stake (#27356-53)
DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
Tel. 317.920.0400
Fax  317.920.0404
Kathleen@delaneylaw.net
cstake@delaneylaw.net

Paul B. Poracky (#10899-45)
Karol A. Schwartz (#24679-45)
Koransky, Bouwer & Poracky, P.C.
425 Joliet Street, Suite 425
Dyer, IN 46311
Tel. 219.865.6700
Fax 219.865.5840
pporacky@kblegal.net
kschwartz@kblegal.net

*Attorneys for Plaintiff Kathy Lynn Gralik*

28